240 F.2d 164
 COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
WEBSTER CORPORATION, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
SHELBY CORPORATION, Respondent.
COMMISSIONER OF INTERNAL REVENUE, Petitioner,
v.
ESSEX CORPORATION, Respondent.
 No. 108.
 No. 109.
 No. 110.
 Docket 24152.
 Docket 24153.
 Docket 24154.
 United States Court of Appeals Second Circuit.
 Argued November 14, 1956.
 Decided January 17, 1957.
 
 Morton K. Rothschild, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for petitioner.
 Charles C. Parlin, New York City (Margaret Smith and Shearman & Sterling & Wright, New York City, on the brief), for respondents.
 Before CLARK, C. J., and FRANK* and HINCKS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Affirmed on the findings and opinion of the Tax Court, 25 T.C. 55, which we will amplify only to cover two points pressed before us but not dealt with in the opinion below.
 
 
 2
 The Commissioner contends that the decision below is in conflict with the case of Webb v. O'Brien, 263 U.S. 313, 44 S.Ct. 112, 114, 68 L.Ed. 318. That case is distinguishable on the facts. There the crop-sharing arrangement was under a four year contract whereby the owner agreed not to interfere with the farmer in the planting, cultivating and harvesting of the crop. In consequence, the farm worker was unrestricted in the use he might make of the land: he was at liberty to exhaust the soil for quick profits. In the case at bar, yearly contracts were adopted and utilized in a long-range program for the rehabilitation of the soil through a plan carefully designed by the owners (i.e., the taxpayers) for the rotation of crops by specifying each year what crops should be planted in which fields. The farm worker agreed not to work on, or manage, other farms. All in all, to a considerably greater degree than in Webb the owners reserved and exercised a right to give continuing effect to their considerable skill and experience in agricultural operations by means of close supervision and control over the detail of operations accomplished through a local agent.
 
 
 3
 Even more significant is the distinction between the legal problems presented in the two cases. In Webb, the arrangement involved was tested for its compatibility with the California Alien Land Law, St.1921, p. lxxxiii, West's Ann.Civ.Code, § 671, note, the objective of which was thought to be the prevention of a situation in which "[c]onceivably, by the use of such contracts, the population living on and cultivating the farmlands might come to be made up largely of ineligible aliens." In the case at bar, however, the problem is whether the arrangement was such that the resulting income to the owners was "rent" within the definition of the personal holding company provisions of the Internal Revenue Code, 26 U.S.C.A. § 502(g) — provisions designed to prevent the creation of holding companies for the hoarding of earnings in the corporate pocketbook which otherwise would be distributable to stockholders and taxable to them. This problem is utterly incommensurate with that involved in Webb. Consequently the holding in the Webb case is not relevant here.
 
 
 4
 Further, the Commissioner asserts that the rule of Webb v. O'Brien "has been followed, in effect, by the Internal Revenue Service in Rev.Rul. 55-538, 1955-2 Cum.Bull. 313, for purposes of the Federal Insurance Contributions Act of 1954 and the Self-Employment Contributions Act of 1954 (I.R.C. of 1954, c. 21, subchapter C, and c. 2, respectively [26 U.S.C.A. §§ 3121 et seq., 1401 et seq.])." This ruling was to the effect that farm workers under crop-sharing contracts similar to those involved here were independent contractors and self-employed individuals for purposes of these Acts, and it is urged that the ruling is "consistent" with the Commissioner's position in this case. But even if this be so, the ruling is equally consistent with the taxpayers' position. And that aside, we think a 1954 Ruling of the Service directed to the impact of the Insurance Contributions Act and the Self-Employment Contributions Act to be of no help in solving the problem presented here.
 
 
 5
 The problem presented arises out of an arrangement comprising many factors some of which pointed toward a landlord-and-tenant relationship and others of which pointed in other directions. We think the solution reached, better than any other, accords with the language of the statute interpreted in the light of its history and objective.
 
 
 6
 Affirmed.
 
 
 
 Notes:
 
 
 *
 Judge Frank died before expressing his position as to this opinion